**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**NORTHERN DIVISION**
**AT COVINGTON**

**CIVIL ACTION NO. 08-234-DLB-JGW**

**SAMUEL KARIUKI**                                                    **PLAINTIFF**

**vs.**                          **MEMORANDUM OPINION & ORDER**

**COMAIR, INC.**                                                    **DEFENDANT**

\*     \*     \*     \*     \*     \*     \*

        This employment discrimination action arises from Plaintiff Samuel Kariuki's claim

that Defendant Comair, Inc. discriminated against him on the basis of race and national

origin when it failed to promote him to three available positions.  Plaintiff brings this action

under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.,* and the Kentucky

Anti-Discrimination Statute, KRS § 344.040.

        This matter is before the Court on Defendant Comair Inc.'s motion for summary

judgment.  (Doc. # 23).  The motion has been fully briefed and is ripe for review.  (Docs.

# 27, 31).  Upon review of the briefs, the Court finds oral argument is not necessary.

Because Plaintiff has failed to establish a prima facie case of discrimination as to any of the

three available positions, Defendant's motion for summary judgment is **granted**.

**I.      FACTUAL BACKGROUND**[1]

--------------------------------------

        [1] The fact section of Plaintiff's Complaint alleges that "[t]hroughout his employment, Plaintiff
has been harassed because of his race and/or national origin."  (Doc. # 1 ¶ 17).  Neither of
Plaintiff's two counts, however, state a claim of harassment.  Though Plaintiff devotes more than
a page of the "Statement of Facts" portion of his response brief to documenting this harassment
(Doc. # 27 at 3-5), he neither argues that the harassment is direct evidence of discrimination nor

1

Plaintiff Samuel Kariuki, a black male from Kenya, East Africa, emigrated to the United States in 1993 after completing high school in Kenya. (Doc. 28-6 at 2-3). In 2004 he graduated from Cincinnati State with an Associates Degree in aviation maintenance and was licensed by the Federal Aviation Administration (FAA) as an airframe and powerplant (A&P) mechanic. (Doc. # 28-6 at 3). The same year, Plaintiff interviewed with Comair recruiter Richard (Rick) Payne and was hired as an A&P mechanic. (Doc. # 28-6 at 5).

Plaintiff began working in Comair's hangar maintenance department in November 2004 performing light to moderate maintenance on aircraft expected to return to flight status the next day. (Docs. # 28-6 at 5-6). Plaintiff's supervisor completed a performance evaluation in April 2005 which indicated that although Plaintiff had good initiative, worked hard, and was personable, he needed to improve the quality and quantity of his work, as well the technical skills required of an A&P mechanic. (Doc. # 23-1). Also in April 2005, an avionics supervisor documented an incident in which Plaintiff used the wrong kind of grease on an avionics part and, when asked about it, lied. The avionics supervisor concluded that this "lack of attention to detail . . . and lying to a supervisor" was "unprofessional and certainly does not fit the profile of a Comair mechanic." (Doc. # 23-1 at 2).

---

that he has alleged a claim of harassment. Moreover, Plaintiff's response brief does not set out the elements of a claim of harassment, analyze how the facts of this case fit those elements, or respond to Defendant's arguments that any harassment is without merit. Accordingly, the Court finds that Plaintiff has not alleged a claim of harassment and, therefore, this Memorandum Opinion & Order does not discuss Plaintiff's factual allegations of harassment or speculate on the viability of a harassment claim. *See McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) (quoting *Citizens Awareness Network, Inc. v. United States Nuclear Regulatory Comm'n*, 59 F.3d 284, 293-94 (1st Cir. 1995) ("Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones.").

In December 2006, Defendant Comair advertised five vacant avionics technician positions; the available positions covered different shifts and were identified by a unique requisition number. (Doc. # 23-14 at 46). Plaintiff applied for the avionics technician vacancy identified by requisition number 06-6000-1225. (Doc. # 28-12). Plaintiff's application stated that he had two years experience as an A&P mechanic; the ability to comprehend, analyze, and interpret technical data and schematic diagrams; the ability to diagnose and troubleshoot various systems, including electronics; and exceptional computer knowledge. (Doc. # 28-12). Plaintiff satisfied the minimum qualifications for the position[2] and was interviewed by Dave Wahn, the avionics manager, and Rick Payne, the human resources recruiter.[3] (Doc. # 23-14 at 46-47).

A primary issue of contention regarding the interview is which shift(s) Plaintiff represented he was able to work. Plaintiff testified that he told the interviewers that he would prefer to work third shift, but that he was willing and available to work first and second shifts. (Doc. # 28-11 at 2, 7). Rick Payne, by contrast, pointed to his notes from the interview, which read, "Prefers 3rd shift could do 1st but not 2nd." (Doc. # 28-20 at 2). Payne confirmed during his deposition that "I do remember for a fact in that interview that

---

[2] Rick Payne, Defendant's recruiter, was asked whether Plaintiff satisfied the minimum qualifications for the avionics technician position; he responded, "If he got an interview, he did." (Doc. # 28-4 at 5). When pressed to confirm that the fact that Plaintiff was interviewed for the position meant that he was qualified, Payne concluded, "Yes." (Doc. # 28-4 at 5). Later, Payne answered "Yeah" when asked whether it would "be accurate to say, though, that Samuel met the minimum qualifications for the avionics technician position." (Doc. # 28-4 at 13).

[3] Rick Payne testified that hiring decisions were made by him, the recruiter, and the manager of the hiring division. (Doc. # 28-4 at 3). Dave Wahn, by contrast, stated that the manager made the hiring decision contingent on approval from the director of the division that was hiring. (Doc. # 23-16 at 4). Wahn explained that the recruiter, Rick Payne, "makes sure people are qualified," and sets up the interviews. (Doc. #23-16 at 2).

[Plaintiff] did say that he was not willing to work a certain shift." (Doc. # 28-4 at 8). Payne explained that the position for which Plaintiff applied required the employee to work all shifts, so Plaintiff's unwillingness to work a shift was "probably a big, huge part of" the reason his application was rejected. (Doc. # 28-4 at 8). Later, when asked whether "the shift was the major overwhelming factor," Payne responded, "Yes. He specifically said he could not work it." (Doc. # 23-15 at 7).[4]

In addition to concerns regarding Plaintiff's shift availability, Rick Payne explained that Plaintiff lacked experience repinning and rewiring. (Doc. # 23-15 at 4). Because of this, Payne concluded that Plaintiff's technical skills put him near the bottom of the list of applicants. (Doc. # 23-15 at 11). Ultimately, however, it remains unclear whether it was Plaintiff's alleged inability to work all shifts or lack of technical skills that led Payne to decide against Plaintiff. As Payne concluded: "I have never changed my story on the pinning or wiring or the shifts. . . . That was always the biggest thing." (Doc. # 23-15 at 11).

By contrast, Dave Wahn, the avionics manager, testified that Plaintiff's inexperience would not have been a bar to being hired: "[W]e've hired people with minimal experience before and been able to train them." (Doc. # 28-16 at 13). Wahn explained that "when you become an avionics technician at Comair, you're always going to get a certain amount of

---

[4] Plaintiff asserts that Dave Wahn, the avionics manager, "testified that Mr. Kariuki did not express any difficulty working on any particular shift." (Doc. # 27 at 15). The deposition excerpt Plaintiff cites in support, however, merely reveals that Wahn did not recall whether Plaintiff's availability was a problem for hiring purposes:

Q: Do you recall if there was any discussion about shifts during the interview with Samuel [Kariuki]?
A. I can't tell you for sure, but I would think there would have been.
Q. And do you recall any particular difficulty posted [sic] by his answer as to his availability for any particular shift?
A. I definitely don't recall that.

(Doc. # 28-16 at 12)

training, a certain set of minimal training classes, schools, qualifications." (Doc. # 28-16 at 13). Wahn confirmed that because of such training, an applicant's lack of experience would not necessarily disqualify the applicant, though he did concede that relevant experience could give one applicant an edge over another. (Doc. # 28-16 at 15-16).

Accordingly, Dave Wahn offered an explanation somewhat different than Rick Payne for why Plaintiff was not hired for the position. Wahn testified that although he did not recall his interview with Plaintiff, after the interview he spoke to several supervisors about the candidates under consideration. (Doc. # 28-16 at 5). During this process, Wahn learned about the incident in which Plaintiff used the wrong grease on an avionics-specific system. (Doc. # 28-16 at 5-6). As described above, when asked which grease he used, Plaintiff told the avionics supervisor that he had used the correct grease; the avionics supervisor checked Plaintiff's work and determined that he had used the wrong grease. (Doc. # 28-16 at 7). Wahn deemed this incident "detrimental to [Plaintiff's] employment as an avionics technician," and, when asked whether it was the reason Plaintiff was not awarded the avionics technician position, concluded, "I would say, yes." (Doc. # 28-16 at 5, 7).

Ultimately, Frank Bednar was awarded avionics technician position 1225. (Docs. # 23-2 ¶ 3; 23-5). Bednar had six years of avionics experience in the Marine Corps, including experience as an avionics technician and as a shop shift supervisor, as well as relevant course work. (Doc. # 23-6).

Plaintiff, however, contends that Defendant discriminated against him when it awarded Zachary Finck avionics technician position 1226. (Docs. # 23-2 ¶ 3; 23-5). Plaintiff argues that Finck's background and qualifications are inferior to his. Plaintiff points out that he has received a Bachelor of Arts in leadership development from Northern

Kentucky University and an Associates of Arts in aviation maintenance from Cincinnati State (Doc. # 28-6 at 3), while Finck dropped out of both institutions. (28-22 at 2-3). Plaintiff also emphasizes that though he and Finck both have an A&P certificate from the FAA, Plaintiff received his approximately two years before Finck, so he has more experience. (Doc. # 28-22 at 12). Lastly, Plaintiff argues that he had experience as an A&P mechanic when he applied, while Finck was merely part of the ground crew (which relocated and towed aircraft, serviced the lavatory and water systems, and cleaned the aircraft for passenger flight) and parts department—neither of which involved mechanical or avionics work—before being awarded the avionics technician position. (Doc. # 28-22 at 7-9).

Rick Payne, Defendant Comair's recruiter, acknowledged that Finck's experience was, in many pertinent respects, similar to Plaintiff's. (Doc. # 28-4 at 13). However, he emphasized that unlike Plaintiff, Finck had gained practical electronic experience pinning and crimping while working on automobiles. (Doc. # 28-4 at 6). Payne also noted that Finck was enthusiastic about learning avionics, but that Plaintiff did not express any such enthusiasm. (Doc. # 28-4 at 9).

Unlike Plaintiff, who only applied for requisition number 1225, however, Finck applied for requisition numbers 1225 and 1226, and was awarded 1226. (Docs. # 23-3; 23-7). Plaintiff contends that because both 1225 and 1226 were avionics technician positions (Doc. # 23-15 at 8), he should have been (or, was) considered for both. Comair disputes this.

Dave Wahn testified that he could not recall whether Frank Bednar, who was awarded requisition number 1225, applied for requisition number 1225 or 1226. (Doc. #

28-16 at 20).  When asked whether the specific requisition number would have mattered, Wahn testified that if both 1225 and 1226 "were both line positions, I don't think so."  (Doc. # 28-16 at 20).  Rick Payne, the human resources recruiter, confirmed that both 1225 and 1226 were avionics technician positions because they were on the same job posting form, but said that applicants "would have to apply for both if they were interested in both."  (Doc. # 23-15 at 8).  Accordingly, Defendant "would have only considered [Plaintiff] for 1225. . . . [W]e couldn't have considered him for 1226, because he did not what we call bid for that.  If he only bid for the one, he's only going to be considered for the one."  (Doc. # 23-15 at 12).  Similarly, Comair's human resources representative stated in an affidavit that Defendant "does not consider internal applicants for vacanc[ies] for which they have not applied" so Plaintiff "would not have been considered for job requisition number 1226 because he never applied for it."  (Doc. # 23-2 ¶¶ 10-11).

After applying for avionics technician position 1225, Plaintiff applied for a production planner position with Defendant Comair.  A production planner schedules aircraft maintenance.  (Doc. # 23-8).  The posting that advertised the openings expressly stated that experience was required.  (Doc. # 23-8).  Though Plaintiff acknowledged that he did not have any planning experience, he applied nonetheless.  (Doc. # 23-14 at 42).  Rick Payne, Defendant's recruiter, told Plaintiff that because he did not have any experience with scheduling he could not be interviewed.  (Doc. # 23-14 at 44).  Ultimately, the two advertised positions were awarded to applicants with experience.  (Doc. # 23-9).  Though Plaintiff's Complaint alleges that he was discriminated against in being denied this position, Plaintiff conceded in his deposition that "in this issue I tend to feel like the company did okay, did alright about it."  (Doc. # 23-14 at 42).

In May 2009, Plaintiff transferred to Defendant Comair's heavy maintenance division, and has acknowledged that since then Defendant has been "fair" to him. (Doc. # 23-14 at 24). After filing a complaint with the Equal Employment Opportunity Commission (EEOC) and receiving a right-to-sue notice, Plaintiff commenced this employment discrimination action on December 19, 2008. (Docs. # 1; 1-2; 1-3; 1-4).

## II. ANALYSIS

### A. Summary Judgment Standard

Rule 56(a) entitles a moving party to summary judgment if that party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Rule 56(c)(1) further instructs that "[a] party asserting that a fact cannot be or is genuinely disputed must support the assertion by" citing to the record or "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." In deciding a motion for summary judgment, the court must view the evidence and draw all reasonable inferences in favor of the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

The "moving party bears the burden of showing the absence of any genuine issues of material fact." *Sigler v. Am. Honda Motor Co.*, 532 F.3d 469, 483 (6th Cir. 2008). The moving party may meet this burden by demonstrating the absence of evidence concerning an essential element of the nonmovant's claim on which it will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has satisfied its burden, the nonmoving party must "do more than simply show that there is some

metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co.*, 475 U.S. at 586, it must produce specific facts showing that a genuine issue remains. *Plant v. Morton Int'l, Inc.*, 212 F.3d 929, 934 (6th Cir. 2000). If, after reviewing the record in its entirety, a rational fact finder could not find for the nonmoving party, summary judgment should be granted. *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 349 (6th Cir. 1998).

Moreover, the trial court is not required to "search the entire record to establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989). Rather, "the nonmoving party has an affirmative duty to direct the court's attention to those specific portions of the record upon which it seeks to rely to create a genuine issue of material fact." *In re Morris*, 260 F.3d 654, 665 (6th Cir. 2001).

## B.    Plaintiff's Claims of Discrimination for Failure to Promote

Plaintiff alleges that he was discriminated against on the basis of his race and national origin in violation of Title VII of the 1964 Civil Rights Act and the Kentucky Anti-Discrimination Statute[5] when his employer, Defendant Comair, Inc. failed to promote him to three available positions.

A plaintiff can establish a Title VII discrimination claim by producing either direct or circumstantial evidence of discrimination. *DiCarlo v. Potter*, 358 F.3d 408, 414 (6th Cir. 2004) (quoting *Kline v. Tenn. Valley Auth.*, 128 F.3d 337, 348 (6th Cir. 1997)). Where, as

---

[5] "In order to establish a violation of the Kentucky Civil Rights Act, a plaintiff must prove the same elements as required for a *prima facie* case of discrimination under Title VII." *Talley v. Bravo Pitino Rest., Ltd.*, 61 F.3d 1241, 1250 (6th Cir. 1995) *abrogated on other grounds as recognized in Bartlett v. Gates,* 2010 WL 4723786, at *3 (6th Cir. Nov. 15, 2010). Thus, Plaintiff's "state law claim rises or falls with [his] Title VII claim." *Brewer v. Cedar Lake Lodge, Inc.*, 243 F.App'x 980, 988 n.5 (6th Cir. June 30, 2007).

here, a plaintiff seeks to prove discrimination based on indirect evidence, the Court applies the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Vincent v. Brewer Co.*, 514 F.3d 489, 494 (6th Cir. 2007). First, under the *McDonnell Douglas* test, the plaintiff must first show a prima facie case of discrimination. *McDonnell Douglas Corp.*, 411 U.S. at 802. If the plaintiff establishes a prima facie case, the burden then shifts to the employer to offer a legitimate, nondiscriminatory reason for the employment decision. *McDonnell Douglas Corp.*, 411 U.S. at 802. Finally, if the employer sets forth such a reason, the plaintiff must show that the nondiscriminatory reason was actually pretext for unlawful discrimination. *Id.* at 804.

### 1. Prima Facie Case of Discrimination for Failure to Promote

To establish a prima facie case of discrimination based on a failure to promote, Plaintiff must demonstrate that (1) he is a member of a protected class; (2) he applied and was qualified for a promotion; (3) he was considered for and denied the promotion; and (4) other employees of similar qualifications who were not members of the protected class received promotions. *Dews v. A.B. Dick Co.*, 231 F.3d 1016, 1020-21 (6th Cir. 2000).[6] To satisfy this burden, Plaintiff must show "a factual dispute with respect to all four elements of a prima facie case." *Vincent*, 514 F.3d at 494. Because the arguments and evidence applicable to each desired position differ, the Court takes each in turn.

---

[6] Plaintiff provides a variation of this prima facie test that would require him to establish that he (1) is a member of the protected class; (2) was subjected to an adverse employment action; (3) was qualified for the position; and (4) was replaced by a person outside the protected class. (Doc. # 27 at 17). Unfortunately this test omits key aspects of the appropriate test provided in *Dews* (i.e., the "applied for," "considered for," and "similar qualifications" requirements).

**a.** **Plaintiff has failed to establish a prima facie case of discrimination with respect to avionics technician position 1225.**

Plaintiff is unable to establish a prima facie case of discrimination for Defendant Comair's failure to promote him to avionics technician position 1225. Although Plaintiff satisfies the first three elements of his prima facie case, he is unable to satisfy the fourth element because the employee who received the promotion was more qualified than Plaintiff.

Plaintiff satisfies the first element of a prima facie case of discrimination because he is a member of a protected class—he is black and from Kenya. *Mmubango v. Leavitt*, 428 F.Supp.2d 833, 837 (N.D.Ill. 2006). Plaintiff satisfies the second element of a prima facie case because he submitted an official application for an avionics position—that specifically identified requisition number 1225—and was qualified for the position. Plaintiff satisfies the third element because was interviewed and considered for the avionics technician position, but ultimately denied the promotion.

The fourth and final element of a prima facie case of discrimination is that another employee of similar qualifications, who was not a member of Plaintiff's protected classes, received the promotion. *Dews*, 231 F.3d at 1021. Plaintiff fails this prong because although the successful applicant, Frank Bednar, was not a member of Plaintiff's protected classes, he was more qualified than Plaintiff.

In *White v. Columbus Metropolitan Housing Authority*, 429 F.3d 232, 242 (6th Cir. 2005), the Sixth Circuit held that "to satisfy the fourth prong of the *prima facie* burden in a failure to promote case, it is incumbent upon the plaintiff to establish that she and the non-protected person who ultimately was hired for the desired position had similar

qualifications." The court acknowledged that Sixth Circuit precedent warned against conflating the first (prima facie test) and second (a defendant's legitimate nondiscriminatory reasons) steps in the *McDonnell Douglas* test, but nevertheless found it necessary to "conduct an independent review of the relative qualifications of the plaintiff and the person selected for the position based on the evidence presented in order to determine whether the plaintiff has satisfied the fourth prong of her *prima facie* burden." *Id.* at 242-43.

In *White*, the Sixth Circuit observed that the successful applicant had seventeen (17) years of relevant experience, compared to the plaintiff's seven (7) years of relevant experience, such that the person selected for the position had "superior experience in material and relevant respects." *Id.* at 243-44. Accordingly, the Court held that the plaintiff and the person promoted could not "be considered similarly qualified for the position, as required to meet the fourth prong of [plaintiff's] *prima facie* burden." *Id.* at 244.

Plaintiff alleges that Defendant Comair discriminated against him when it awarded the promotion to Frank Bednar. Just as in *White*, however, experience in avionics is a relevant aspect of Plaintiff's application. And in this respect, Bednar's qualifications were vastly superior to Plaintiff's. When Bednar was hired, he had six years of avionics experience in the Marine Corps, including relevant course work and service as an avionics technician and shop shift supervisor. (Doc. # 23-6). Plaintiff, by contrast, had almost no experience in avionics. (Docs. # 23-3; 23-14 at 45-46; 23-16 at 8). This distinction confirms that Plaintiff was not similarly situated in all relevant respects to Bednar. As in *White*, Plaintiff has not established a prima facie case of discrimination with respect to Defendant Comair's decision not to promote Plaintiff to avionics technician position 1225. Defendant's motion for summary judgment as to this claim is therefore **granted**.

###### b. Plaintiff has failed to establish a prima facie case of discrimination with respect to avionics technician position 1226.

The same prima facie test applies to avionics technician position 1226. As above, the parties do not dispute that Plaintiff satisfied the first prong of the prima facie test because he is a member of two protected classes. They do, however, dispute the remaining three prongs. Because the Court finds no genuine dispute of material fact that Plaintiff failed to apply for avionics technician position 1226; was not considered for the position; and was not as qualified as the successful applicant, summary judgment is appropriate.

The parties most contentiously dispute whether Plaintiff applied for avionics technician position 1226. Plaintiff argues that his application, which listed "avionics technician" as the desired job title, constituted an application for both requisition numbers 1225 and 1226 (and possibly for all five available positions). (Doc. # 28-12). Defendant responds that each available position is identified by a single requisition number, and that Plaintiff's application specified only avionics technician position 1225. Consequently, Defendant concludes that Plaintiff applied and was considered *only* for avionics technician position 1225. Avionics position 1226 was awarded to Zachary Finck, who specifically listed requisition numbers 1225 *and* 1226 on his application. (Docs. # 23-5; 23-7).

Plaintiff relies on the testimony of Dave Wahn, the avionics manager, in support of his argument that he applied for avionics position 1226. During his deposition, Wahn was asked whether he remembered if Frank Bednar (the applicant who was awarded position 1225) "applied for the 1225 requisition or the 1226?" (Doc. # 28-16 at 20). Wahn answered that he did not recall, which prompted a follow-up question: "Okay. Would

it—and it wouldn't have mattered to you, really, would it?" *Id.* Wahn responded: "If they were both line positions, I don't think so." *Id.* Plaintiff argues that this proves that an application for one of the available avionics positions constituted an application for all available avionics positions. The Court disagrees.

But Dave Wahn's statement is more properly evidence of the third, rather than the second, prong of a prima facie case of discrimination. The third prong requires that an applicant have been considered for, and denied, a promotion; that is, it looks to the defendant employer's actions. The second prong looks instead to the applicant's actions, and requires that the plaintiff have applied to the desired position. The question to Wahn, and Wahn's response, went to Defendant Comair's practices—specifically, whether Defendant Comair may have considered Plaintiff for only position 1225, or also for position 1226. Moreover, Wahn's testimony was in response to a question about Frank Bednar's application, not Plaintiff's. Accordingly, the Court does not find Wahn's testimony material to whether Plaintiff applied for avionics position 1226.

Even if Wahn's testimony is considered evidence that Plaintiff applied for position 1226 (i.e., evidence in support of the second prong of a prima facie case), evidence to the contrary overwhelms it, such that there is no genuine dispute that Plaintiff did not apply for avionics position 1226.

Defendant Comair offers evidence from three witnesses who have all stated that to apply to an available position, an applicant must identify each position by requisition number. The statements of Richard Payne, Defendant's recruiter, Cory Albertson, Defendant's human resources representative, and Zachary Finck, the applicant who was awarded position 1226, are clear and stand in stark contrast to Dave Wahn's equivocation

14

(i.e., "*I don't think*" it would have mattered to me if an applicant had only applied for position 1225).

First, Richard Payne said in his deposition that if there were multiple vacancies for the same position, Defendant Comair would sometimes "post multiples"—multiple requisition numbers on the same job posting. In such cases, "[t]here would be different req numbers, and they [applicants] would have to apply for both if they were interested in both." (Doc. # 28-4 at 12). Later in his deposition, Payne confirmed the same procedure: "[W]e couldn't have considered [Plaintiff] for 1226, because he did not what we call bid for that. If he only bid for the one, he's only going to be considered for the one." (Doc. # 23-15 at 12). By contrast, "Zach, he bid for both, [so] he would be considered for both." (Doc. # 23-15 at 12).

This account is consistent with the affidavit of Cory Albertson, Defendant's human resources representative, who stated that "Comair does not consider internal applicants for [a] vacancy for which they have not applied." (Doc. # 23-2 ¶ 10). As such, Albertson affirmed that Plaintiff "would not have been considered for job requisition number 1226 because he never applied for it." (Doc. # 23-2 ¶ 11).

Likewise, Zachary Finck was asked in his deposition why he listed two requisition numbers. He responded, "[y]ou've got to put those numbers down so that the filing department, hiring department knows what you're applying for, and keep record of it." (Doc. # 28-22 at 17).[7]

---

[7] Zachary Finck also testified that the requisition numbers were significant because "[i]t's a union thing that the union requires you to do." (Doc. # 28-22 at 17). Plaintiff observes that the avionics technician position is not a union position and that Finck has acknowledged that he has not been in the union since accepting the avionics technician position. (Doc. 28-22 at 18). The

This testimony is corroborated by applications that have been filed of record in this case.  As noted above, Zachary Finck listed two requisition numbers on his application—1225 and 1226—even though both requisition numbers identified avionics technician positions advertised on the same posting.  (Docs. # 23-7; 28-22 at 17-18). Similarly, the record reveals that when Defendant Comair posted vacancies for two production planner positions, it identified the positions by requisition numbers 07-6000-0075 and 07-6000-0076.  (Doc. # 23-8).  The applications of the two successful applicants listed both requisition numbers.  (Doc. # 23-9).  This evidence demonstrates that to apply for an internal position at Comair, an employee must identify the specific position desired by requisition number—at least where, as here, the positions are advertised and identified by requisition number.  Accordingly, Plaintiff applied for only one the avionics technician position identified by requisition number 1225.

This conclusion is bolstered by the fact that Defendant Comair had five avionics technician positions available when Plaintiff applied.  The five positions differed by shifts and work.[8]  (Doc. # 23-14 at 47).  This suggests that the requisition numbers signified material differences between the positions, and were not merely arbitrary identifiers.[9]  As

Court, however, does not rely on Finck's *reason* for believing that requisition numbers are necessary to identify and apply for a specific position, only the *fact* that Finck knew that each position was identified by a different requisition number and that to apply to more than one vacancy, an applicant must list more than one requisition number.

[8] In attempting to convince the Court that an application for position 1225 also constituted an application for position 1226, Plaintiff states that he applied for a third shift position and Finck was hired for a third shift position.  In support, Plaintiff cites a portion of his deposition that has not been provided to the Court.  (Doc. # 27 at 16).  Assuming Plaintiff's facts are correct, however, he fails to explain how this alters the Court's conclusion.

[9] Defendant Comair also asserts that the avionics technician positions were spread across geographic locations, including Miami, Florida and Cincinnati, Ohio.  (Docs. # 23 at 12; 31 at 2).

Defendant Comair argues, Plaintiff has offered no explanation for whether his application should have been construed as an application for all five vacant positions or just for positions 1225 and 1226.

Finally, Plaintiff has not presented case law to suggest that an application for requisition number 1225 also constituted an application for the other vacant avionic technician positions.[10]  Plaintiff has also failed to argue that this case fits an exception to the prima facie requirement that a plaintiff apply for a promotion[11]—or even that the Court

---

Defendant argues that "[n]o doubt Plaintiff would have objected if he were awarded the position in Miami Florida, even though he applied for a position in Cincinnati." (Doc. # 31 at 2).  Though Plaintiff does not object to this factual statement, Defendant does not point to evidence in the record in support.  Accordingly, the Court does not consider this evidence.  However, because there is record evidence that there were five avionics positions spread across different shifts, the Court does conclude that each requisition number identified a specific position that may have had different requirements.

[10]  The Court's independent research has not located factually analogous case law that would call its conclusion into question.  The closest case uncovered is *Czubernat v. University of Phoenix*, No. 07 C 2821, 2008 WL 2339570, at *1 (N.D.Ill. June 4, 2008), where the defendant employer identified each position with an RFH number and applicants "were not considered for any other RFH, even for the same position, unless they applied to each individual RFH."  Because the plaintiff specified only one RFH number, the court in *Czubernat* held she had not applied for any other position—including four of the same positions, identified by different RFH numbers, that became available after the plaintiff initially submitted her resume.  *Id.* at *2, *5.  Moreover, two positions, RFH numbers 067903 and 067904, were available when plaintiff submitted her resume; but because the plaintiff only specified RFH number 067903, she only "applied" for RFH number 067903—not both available positions.  *Id.* at *5-6.

Although *Czubernat* is distinguishable from this case, its reasoning is persuasive.  There the plaintiff alleged age discrimination for failure to hire, rather than national origin and race discrimination for failure to promote.  *Id.* at *1.  Further, unlike this case, the plaintiff in *Czubernat* was unaware of the employer's RFH policy and alleged that she applied for a position, and not for a single RFH number.  *Id.* at *5.  Nonetheless, *Czubernat's* underlying principle is applicable to this case: Where an employer requires an applicant to specify each position sought by an individual identifier—even if there are multiple vacancies for the same position—the plaintiff must specifically identify each desired position to have "applied," as required to state a prima facie case.

[11]  It is not always necessary for a plaintiff to formally apply for a promotion to state a prima facie case of discrimination.  For example, in *Dews*, 231 F.3d at 1022, the Sixth Circuit recognized an exception where an employer provided no formal avenue to apply and be considered for a promotion.  In such situations, the employer must "consider all those who might reasonably be interested in a promotion were its availability made generally known."  *Id.*; *see also, Hoffman v.*

should create an exception in these circumstances.  Consequently, the Court holds that Plaintiff has not established the second and third prongs of his prima facie case of discrimination because he neither applied, nor was considered for, avionics technician position 1226.

Plaintiff also fails the fourth prong of his prima facie case, which requires that another employee of similar qualifications who was not a member of the protected class receive the promotion.  *Dews*, 231 F.3d at 1021.  Here, Zachary Finck, who is not a member of Defendant's protected classes, received the promotion to avionics technician position 1226.  (Docs. # 23-5; 28-17).  Thus, Plaintiff must establish that he and Finck had similar qualifications.  As noted above, the Sixth Circuit in *White*, 429 F.3d at 242, explained that to satisfy this burden, some "comparison is necessary" between the qualifications of Plaintiff and Zachary Finck.  The Sixth Circuit excepted from this inquiry "the sort of close comparison that might include consideration of the employer's evaluation of subjective traits or other details about why the non-protected person was in fact selected over the plaintiff."  *Id.* at 242-43 n.6.  Thus, in *White* the Sixth Circuit relied exclusively upon "material and relevant" experience to determine that the successful applicant had superior

---

*Honda of America Mfg., Inc.*, 200 F.R.D. 370, 377 (S.D.Ohio 2000) (Analyzing whether plaintiffs alleged "that the Defendant failed to post promotions and either they had no knowledge of the positions, or they made an effort to apply for those promotions through an informal procedure endorsed by the Defendant").  This is not the case here, where there is no dispute that Plaintiff was aware of multiple avionics technician vacancies, that each was identified by a requisition number, and that Plaintiff's official application specified only position number 1225.

Courts have also recognized an exception to the "applied for" prong where the circumstances reveal "overwhelming evidence of pervasive discrimination in all aspects of the employer's internal employment practices, and that . . . any application would have been futile and perhaps foolhardy."  *Bacon v. Honda of America Mfg., Inc.* 370 F.3d 565, 576 (6th Cir. 2004) (quoting *Harless v. Duck*, 619 F.2d 611, 617-18 (6th Cir. 1980)).  This exception is also inapplicable here because Plaintiff has not suggested that his application would have been futile.

qualifications to the plaintiff. *Id.* at 243-44.

Plaintiff contends that he was more qualified than Finck for avionics technician position 1226 and that he has, therefore, satisfied the fourth prong of his prima facie case of discrimination. In support, Plaintiff argues that he has a Bachelor of Arts in leadership development from Northern Kentucky University and an Associates of Arts in aviation maintenance from Cincinnati State (Doc. # 28-6 at 3), while Finck merely began, but did not finish, degrees at both institutions. (28-22 at 3). Further, though Plaintiff and Finck both have an A&P certificate from the FAA, Plaintiff received his approximately two years before Finck, so he has more experience. (Doc. # 28-22 at 12). Lastly, Plaintiff had experience as an A&P mechanic when he applied for a promotion, while Finck was merely part of the ground crew (which relocated and towed aircraft, serviced the lavatory and water systems, and cleaned the aircraft for passenger flight) and parts department—neither of which involved mechanical or avionics work—before being awarded the avionics technician position. (Doc. # 28-22 at 7-9).

Nonetheless Finck had two objective qualifications for the avionics technician position that Plaintiff lacked. First, Finck had practical experience doing electrical wiring in cars, as well as pinning and crimping wires. (Doc. # 28-4 at 6). This experience is material to being an avionics technician because it is "the majority of the work the person would be doing." (Doc. # 23-15 at 5; 28-15).[12] Plaintiff lacked comparable experience.

---

[12] Plaintiff notes that Dave Wahn was asked: "If a person had experience working on automobiles, would that be of any relevance [i]n deciding whether they become an avionics technician." (Doc. # 28-16 at 11). Wahn responded, "Not particularly, no." (Doc. # 28-16 at 11). But it was Payne, an independent decisionmaker, not Wahn, that considered electronic work on automobiles a qualification for an avionics technician position. Further, Payne specified pinning and crimping wires—rather than "experience working on automobiles" in general—as the relevant

(Doc. # 23-15 at 4).

More importantly, however, is the fact that Dave Wahn, the avionics manager, learned shortly after the interview about Plaintiff's grease incident. The incident was relayed to Wahn by Jeff Chipley, who was an avionics supervisor at the time of the incident. (Doc. # 23-16 at 6). He explained that the incident began when he realized that the task card for an avionics system had been signed by Plaintiff. (Doc. # 23-16 at 6). Because mechanics do not usually work on avionics systems, Chipley went to Plaintiff's crew chief who confirmed that Plaintiff had worked on the system, but encouraged Chipley to check the work to ensure that it was done properly. (Doc. # 23-16 at 6-7). Chipley then went to Plaintiff, who confirmed that he had done the work and that he had used the proper grease. (Doc. # 23-16 at 7). When Chipley checked the part, he learned that Plaintiff had used the wrong grease. (Doc. # 23-16 at 7). Using the wrong grease on the part is dangerous because it can freeze during a flight and cause the plane to lose control. (Doc. # 23-17 at 8). This incident was documented by Chipley as part of Plaintiff's 20-week review. (Doc. # 23-1). Wahn based his decision not hire Plaintiff on this incident. (Doc. # 23-16 at 7).

Taken together, Finck's experience with electronics (pinning and crimping wires) and a documented incident in which Plaintiff lied to an avionics supervisor about an avionics part, demonstrates that Finck's qualifications were superior to Plaintiff's. As such, Plaintiff cannot satisfy the fourth prong of a prima facie case of discrimination.

Because Plaintiff has failed to satisfy prongs two, three, and four of his prima facie case—that he applied for avionics position 1226; was considered for the position; and that

qualification.

a similarly qualified employee was awarded the position—Defendant's motion for summary judgment as to avionics technician position 1226 is **granted**.

### c. Plaintiff has failed to establish a prima facie case of discrimination with respect to the production planner position.

The same prima facie test applies to Plaintiff's claim that he was discriminated against in being denied a promotion to production planner. Thus, Plaintiff must demonstrate that (1) he is a member of a protected class; (2) he applied and was qualified for a promotion; (3) he was considered for and denied the promotion; and (4) other employees of similar qualifications who were not members of the protected class received promotions. *Dews*, 231 F.3d at 1020-21. Because Plaintiff has failed to show a genuine dispute of material fact as to elements two and four,[13] the Court finds that he has not established a prima facie case of discrimination with respect to Defendant's failure to award Plaintiff a promotion to production planner.

Plaintiff fails the second prong his prima facie case because, although he applied for a promotion to production planner, he was not qualified for the position. The production planner posting "required" a "minium" of between one and three years of experience. (Doc. # 23-8). As Plaintiff has acknowledged, however, he did not have any scheduling experience. (Doc. # 23-14 at 42, 44). For this reason, Defendant's recruiter, Rick Payne, told Plaintiff that he could not be interviewed. (Doc. # 23-14 at 42, 44). Because Plaintiff was not qualified for the promotion he sought, he cannot establish the second prong of a

---

[13] As with the other desired positions, Plaintiff satisfies the first prong of the prima facie case. Whether Plaintiff was "considered" for the promotion, as required by the third prong, is less clear. The Court need not address this because it holds that Plaintiff failed prongs two and four and, therefore, has not established a prima facie case of discrimination.

prima facie case of discrimination for failure to promote.

Additionally, Plaintiff cannot demonstrate that, as required by the fourth prong of the prima facie test, another employee of "similar qualifications" received a promotion instead. To the contrary, as with the avionics positions, the two employees who were promoted instead of Plaintiff were more qualified than Plaintiff because both had experience in scheduling; Rickey Pemberton had more than nine years experience in airline operations experience, including two years as a maintenance scheduler, while Annie Hemsath had one year as a maintenance scheduler. (Doc. # 23-9). Lacking any experience in scheduling, Plaintiff cannot be said to have "similar qualifications" to the individuals promoted instead of him.[14] Because Plaintiff has failed to satisfy the second and fourth prongs of his prima facie case of discrimination, the Court finds Plaintiff was not discriminated against in failing to promote Plaintiff to the production planning position and, therefore, Defendant's motion for summary judgment on this claim is **granted**.

**C.      Plaintiff has failed to establish that Defendant discriminated against him because it did not send him on "road trips."**

Plaintiff also alleges that "Defendant discriminated against Plaintiff by denying him road trips which were, costing [sic] him additional compensation." (Doc. # 1 ¶ 24). Road trips arise when mechanics travel to disabled aircraft, stranded out-of-town, to conduct repairs. (Doc. # 28-6 at 15). Road trips are desirable because the mechanics are paid time-and-a-half for the entire time they are away. (Doc. # 23-14 at 16-17; 23-17 at 6).

---

[14] Plaintiff's response opposing Defendant's motion for summary judgment (Doc. # 27) does not address his discrimination claim related to the production planner position. Consequently, Plaintiff has not argued that he satisfied his prima facie case regarding the production planner position or put forward supporting evidence.

Which mechanics are sent on which road trips is determined by qualifications and availability. (Docs. # 23-14 at 11; 23-17 at 6). Though Plaintiff testified that he felt like he was treated differently because of his race in the assignment of road trips, he acknowledged that he has been on five or six road trips. (Doc. # 23-14 at 8, 16).

Defendant moves for summary judgment on this claim, arguing that Plaintiff has not presented any evidence that other employees were sent on more road trips, or that he was denied road trips because of his race—rather than for reasons of scheduling or qualifications. (Doc. # 23 at 15-16). Plaintiff's response brief does not offer argument or evidence in support of his road trips discrimination claim and fails to respond to Defendant's arguments. (Doc. # 27). Because Defendant, as the moving party, has shown the absence of a genuine dispute of material fact regarding the road trips claim, the burden shifts to Plaintiff to produce facts showing a genuine dispute. *See Celotex Corp.*, 477 U.S. at 323; *Plant*, 212 F.3d at 934. Plaintiff has failed to satisfy this burden and Defendant's motion for summary judgment on Plaintiff's road trips discrimination claim is, accordingly, **granted**.

Alternatively, the Court holds that Plaintiff has waived his road trips discrimination claim. The Sixth Circuit has held that "[i]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones." *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) (quoting *Citizens Awareness Network, Inc. v. United States Nuclear Regulatory Comm'n*, 59 F.3d 284-293-94 (1st Cir. 1995)). Thus, in *McPherson,* the Sixth Circuit held plaintiffs' state law claim waived because the plaintiffs offered "no real analysis" and failed to explain the elements of their claim or point to evidence on the record that could support

it. *Id.* at 995.

This is the case here. Plaintiff's Complaint alleged that Defendant discriminated against him when it failed to send him on road trips. Plaintiff's response brief, however, failed to set forth the elements of his claim or point to evidence on the record in support. Accordingly, the Court finds, in the alternative, that Plaintiff has waived his claim that Defendant discriminated against him in failing to send him on road trips.

### III. CONCLUSION

For the foregoing reasons, **IT IS ORDERED** that,

1. Defendant's Motion for Summary Judgment (Doc. # 23) is **GRANTED**;

2. Plaintiff's federal and state claims that Defendant Comair discriminated against him when it failed to promote him to avionics technician position 1225, avionics technician position 1226, and production planner, are **DISMISSED**;

3. Plaintiff's federal and state claim that Defendant discriminated against him when it failed to send him on road trips is **DISMISSED**;

4. This action is **STRICKEN** from the active docket of the Court; and

5. A separate judgment shall be entered concurrently.

This 2nd day of June, 2011.



Signed By:

*David L. Bunning* DB

United States District Judge